**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | |
|---|---|
| MIAH CLIATT, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>AFLAC INCORPORATED,<br><br>*Defendant*. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff MIAH CLIATT ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Defendant Aflac Incorporated ("Defendant"), based on Plaintiff's personal knowledge and on information and belief derived from, among other things, investigation by counsel as to all other matters:

## SUMMARY OF THE CASE

1. This action arises from Defendant's failure to secure the personally identifiable information ("PII")[1] and protected health information ("PHI")[2]

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

[2] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.*, and its implementing regulations ("HIPAA"), "protected health information" is defined as individually

(collectively, "Private Information") of Plaintiff and the members of the proposed Class, where Plaintiff provided her Private Information to Defendant for supplemental insurance services and products.

2. According to its website,

> [Defendant] is a Fortune 500 company, providing financial protection to millions of policyholders and customers through its subsidiaries in the U.S. and Japan. When a policyholder or insured gets sick or hurt, Aflac pays cash benefits promptly, for eligible claims, directly to the insured (unless assigned otherwise). For more than six decades, Aflac voluntary insurance policies have given policyholders the opportunity to focus on recovery, not financial stress.[3]

3. On or about June 20, 2025, Defendant began sending emails entitled "Aflac Cybersecurity Incident" ("Notice Email") to Plaintiff and Class Members, advising them that it recently detected suspicious activity on its network. In its Notice Email, Defendant advises that its investigation into the cybersecurity incident is ongoing and that it has not yet confirmed the extent of unauthorized activity, potentially impacted data, or the customers or other individuals impacted in the cybersecurity incident ("Data Breach").

---

identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103 *Protected health information*. "Business Health information such as diagnoses, treatment information, medical test results, and prescription information are considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. *Summary of the HIPAA Privacy Rule*, HHS, https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html (last visited July 1, 2025).

[3] *About Aflac Incorporated*, Aflac, https://www.aflac.com/about-aflac/default.aspx (last visited July 1, 2025).

4. According to the Notice Email, the Private Information intruders accessed and infiltrated from Defendant's systems included claims information, health information, Social Security numbers, and/or other personal information, related to customers, beneficiaries, employees, agents, and other individuals in Defendant's U.S. business.

5. As a result of the Data Breach, which Defendant failed to prevent, Plaintiff's and the proposed Class Members' Private Information, was stolen.[4]

6. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement reasonable measures to safeguard the Private Information of its current and former customers, beneficiaries, employees, agents, and other individuals in its U.S. business, and by failing to take necessary steps to prevent unauthorized disclosure of that information. Defendant's woefully inadequate data-security measures made the Data Breach a foreseeable, and even likely, consequence of its negligence.

7. As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of their Private Information; (c) loss of benefit of the bargain (price premium damages);

---

[4] *Id.*

(d) loss of value of privacy and confidentiality of the stolen Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) expense and time spent initiating fraud alerts and contacting third parties; (k) decreased credit scores; (l) anxiety, annoyance, and nuisance; and (m) continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

8. Plaintiff and Class Members would not have provided their valuable Private Information had they known that Defendant would make their Private Information Internet accessible, not encrypt personal and sensitive data elements, and not delete the Private Information it no longer had reason to maintain.

9. Through this lawsuit, Plaintiff seeks to hold Defendant responsible for the injuries it inflicted on Plaintiff and Class Members due to its inadequate data-security measures and seek injunctive relief to ensure that Defendant implements security measures to protect the Private Information that remains in Defendant's possession.

10. The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before this Data Breach, Plaintiff's and the Class's Private Information was exactly that—private. Not anymore. Now, thanks to Defendant's misfeasance, their Private Information is forever exposed and unsecure.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of Class Members is in the millions, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

12. This Court has personal jurisdiction over Defendant because it is a Georgia corporation that operates and has its principal place of business in this District and conducts substantial business in this District.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendant is domiciled in this District, maintains Plaintiff's and Class Members' Private Information in this District, and has caused harm to Plaintiff and Class Members in this District.

## PARTIES

14. Plaintiff is, and at all relevant times has been, a resident and citizen of Phenix City, Russell County, Alabama.

15. Defendant is a Georgia corporation with its headquarters and principal place of business located at 1932 Wynnton Road, Columbus, Georgia 31999.

## FACTUAL ALLEGATIONS

### A. The Data Breach

16. As a condition of obtaining insurance, Plaintiff and Class Members were required to provide Defendant with their sensitive and confidential Private Information, including their names, health information, Social Security numbers, and other sensitive information, that at the time of the Data Breach were held by Defendant in its computer systems.

17. On June 20, 2025, Defendant sent a notice to Plaintiff and Class Members.[5] In the Notice Email, Defendant offers Plaintiff and Class Members 24 months of credit monitoring and provides a dedicated call center to answer questions they may have about the Data Breach.

18. That same day, Defendant also posted a press release on its website, entitled "Aflac Incorporated Discloses Cybersecurity Incident" ("Online Disclosure"). The Online Disclosure states:

---

[5] *Exhibit A*, Plaintiff's Notice Email.

> On June 12, 2025, Aflac Incorporated (NYSE: AFL) identified suspicious activity on our network in the United States. We promptly initiated our cyber incident response protocols and stopped the intrusion within hours. Importantly, our business remains operational, and our systems were not affected by ransomware. We continue to serve our customers as we respond to this incident and can underwrite policies, review claims, and otherwise service our customers as usual. This attack, like many insurance companies are currently experiencing, was caused by a sophisticated cybercrime group. This was part of a cybercrime campaign against the insurance industry.
>
> We have engaged leading third-party cybersecurity experts to support our response to this incident. While the investigation remains in its early stages, in the spirit of transparency and care for our customers, we are sharing that our preliminary findings indicate that the unauthorized party used social engineering tactics to gain access to our network. Additionally, we have commenced a review of potentially impacted files. It is important to note that the review is in its early stages, and we are unable to determine the total number of affected individuals until that review is completed. The potentially impacted files contain claims information, health information, social security numbers, and/or other personal information, related to customers, beneficiaries, employees, agents, and other individuals in our U.S. business. We remain committed to caring for and supporting our customers. While our teams work to review the potentially impacted data and determine the specific information involved, we are offering **any individual who contacts our dedicated call center free credit monitoring and identity theft protection, and Medical Shield for 24 months.**[6]

19. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, such as encrypting the information or purging it when it was no longer needed, causing the exposure of Private Information.

---

[6] Press Release, Aflac, Aflac Incorporated Discloses Cybersecurity Incident (June 20, 2025), https://newsroom.aflac.com/2025-06-20-Aflac-Incorporated-Discloses-Cybersecurity-Incident (emphasis in original).

20. As evidenced by the Data Breach, the Private Information contained in Defendant's network was not encrypted. Had the information been properly encrypted, the data thieves would have exfiltrated only unintelligible data.

21. As a result of the Data Breach, Plaintiff and Class Members are now at a current, imminent, and ongoing risk of fraud and identity theft. Plaintiff and Class Members must now—and for years into the future—closely monitor their medical and financial accounts to guard against identity theft. As a result of Defendant's unreasonable and inadequate data security practices, Plaintiff and Class Members have suffered numerous actual and concrete injuries and damages.

22. The risk of identity theft is not speculative or hypothetical; it is impending and has materialized, as shown by evidence that the Plaintiff and Class Members' Private Information was targeted, accessed, has been misused, and disseminated on the Dark Web.

23. Plaintiff and Class Members must now closely monitor their financial accounts to guard against future identity theft and fraud. Plaintiff and Class Members have heeded warnings to mitigate against the imminent risk of future identity theft and financial loss. Such mitigation efforts have included and will continue to include in the future, among other things: (a) reviewing financial statements; (b) changing passwords; and (c) signing up for credit and identity theft monitoring services. The

loss of time and other mitigation costs are tied directly to guarding against the imminent risk of identity theft.

24. Plaintiff and Class Members have suffered numerous actual and concrete injuries as a direct result of the Data Beach, including: (a) financial costs incurred through mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (c) financial costs incurred due to actual identity theft; (d) loss of time incurred due to actual identity theft; (e) deprivation of value of their Private Information; and (f) the continued risk to their sensitive Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect it.

25. Through this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

26. Accordingly, Plaintiff seeks remedies including, but not limited to, compensatory damages; reimbursement of out-of-pocket costs; and injunctive relief, including improvements to Defendant's data security systems, future annual audits, as well as long-term and adequate credit monitoring services funded by Defendant; and declaratory relief.

27. On June 12, 2025, Defendant identified suspicious activity on its IT Network.[7] In response, Defendant initiated its cyber incident response protocol and launched an investigation to determine the nature and scope of the Data Breach.[8]

28. Defendant has confirmed that the Data Breach was led by a sophisticated cybercrime group.[9]

29. On or about April 2, 2024, Defendant discovered that an unauthorized actor or actors accessed and acquired files from its IT systems on or about April 1, 2024.[10] In response, Defendant launched an investigation to determine the nature and scope of the Data Breach.[11]

30. Upon information and belief, Defendant's investigation determined that the following types of Private Information were compromised because of the Data Breach: health information; Social Security numbers; and/or other personal information related to customers, beneficiaries, employees, agents, and other individuals in its U.S. business.[12]

31. Plaintiff's claims arise from and relate to Defendant's failure to safeguard her Private Information and failure to provide timely notice of the Data Breach.

---

[7] *Exhibit 1*, Plaintiff's Notice Email.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

32. Defendant failed to take precautions designed to keep individuals' Private Information secure.

33. While Defendant sought to minimize the damage caused by the Data Breach, it cannot deny and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

34. Individuals affected by the Data Breach are and remain at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

35. Defendant failed to take adequate measures to protect Plaintiff and Class Members' Private Information against unauthorized access.

36. The Private Information exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

37. Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the Federal Trade Commission's ("FTC") data security principles and practices,[13] Defendant failed to disclose that its security practices were inadequate to reasonably safeguard individuals' sensitive Private Information.

38. The FTC directs businesses to use an intrusion-detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have

---

[13] *Protecting Personal Information: A Guide for Business,* FTC (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited June 20, 2025).

an immediate response plan if a breach occurs.[14] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.

**B. Aflac's Business**

39. Defendant is a Fortune 500 company that provides financial protection to millions of policyholders and customers through its subsidiaries in the U.S. and Japan.

40. Upon information and belief, in the course of collecting Private Information from individuals (including Plaintiff and Class Members), Defendant promised to provide confidentiality and adequate security for the data it collected from individuals through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

41. Because of the highly sensitive and personal nature of the customer and employee information Defendant acquires and, Defendant upon information and belief promises to, among other things: keep Protected Information private; comply with industry standards related to data security and Private Information, inform consumers of its legal duties and comply with all federal and state laws protecting consumer Private Information; use and release Private Information only for reasons that relate to medical care and treatment, and provide adequate notice to individuals if their Private Information is disclosed without authorization.

[14] *Id.*

42. At every step, Defendant acquires and maintains sensitive Private Information and has a duty to protect that Private Information from unauthorized access.

43. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

44. Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

45. Plaintiff and Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use their Private Information solely for proper business services and purposes, and to prevent the unauthorized disclosure of their Private Information.

**C. Defendant had a Duty to Protect the Private Information**

46. Defendant's failure to adequately secure Plaintiff's and Class Members' Private Information breaches duties it owes Plaintiff and Class Members under statutory and common law. Moreover, Plaintiff and Class Members surrendered their highly sensitive personal data to Defendant with the expectation that Defendant would keep it private and secure.

47. Defendant was prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.[15]

48. The increase in such attacks and attendant risk of future attacks were widely known, including to Defendant, and the failure to maintain reasonable security here in light of that knowledge was a violation of the FTC Act.

49. In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected Plaintiff's and Class Members' Private Information.

---

[15] *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 248 (3d Cir. 2015) ("[T]he Commission enforces the FTC Act's proscription against unfair . . . acts . . . in cases where a business['s] . . . failure to employ reasonable security measures causes or is likely to cause substantial consumer injury." (alterations in original) (internal quotation marks omitted) (quoting *Consumer Data Protection: Hearing Before the Subcomm. on Commerce, Mfg. & Trade of the H. Comm. on Energy & Commerce,* 2011 WL 2358081, at *6 (June 15, 2011) (statement of Edith Ramirez, Comm'r, FTC))).

50. Defendant owed a duty to Plaintiff and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that the Private Information in its possession was adequately secured and protected.

51. Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including not sharing information with other entities who maintained substandard data security systems.

52. Defendant owed a duty to Plaintiff and Class Members to implement processes that would immediately detect a breach on its data security systems in a timely manner.

53. Defendant owed a duty to Plaintiff and Class Members to disclose to them if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust this Private Information to Defendant.

54. Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

55. Defendant owed a duty to Plaintiff and Class Members to encrypt and/or more reliably encrypt Plaintiff and Class Members' Private Information and monitor user behavior and activity to identify possible threats.

56. At all relevant times, Defendant knew or reasonably should have known of the importance of safeguarding Plaintiff's and Class Members' Private Information and the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

57. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on its network, amounting to, at least, tens of thousands of individuals' Private Information, and thus the significant number of individuals who would be harmed by the exposure of the unencrypted data.

**D. Value of Private Information**

58. The Private Information of individuals remains of high value to criminals, as evidenced by the prices criminals will pay through the Dark Web. Numerous sources cite Dark Web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[16] Experian reports that a stolen credit

[16] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs*, Digit. Trends (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

or debit card number can sell for $5 to $110 on the dark web.[17] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[18]

59. Based on the foregoing, the information compromised in the Data Incident—including full names matched with Social Security numbers—is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Incident, conversely, is impossible to "close" and difficult, if not impossible, to change.

60. This data also demands a much higher price on the black market than does payment card information. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[19]

61. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

---

[17] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.
[18] *In the Dark*, VPNOverview, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.
[19] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

62. The fraudulent activity resulting from the Data Incident may not come to light for years as there may be a time lag between when harm occurs versus when it is discovered, and also between when the Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[20]

63. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding Plaintiff's and Class Members' Private Information, including Social Security numbers, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

64. Plaintiff and Class Members now face a lifetime of constant surveillance of their financial and personal records, credit monitoring, and loss of rights. Class Members are incurring and will continue to incur such damages in

---

[20] U.S. Gov't Accountability Off., GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* 29 (2007), https://www.gao.gov/assets/gao-07-737.pdf.

addition to those that would arise from any fraudulent use of their Private Information.

65. Defendant has acknowledged the risk and harm caused to Plaintiff and Class Members as a result of the Data Incident. Defendant, to date, has offered Plaintiff and Class Members abbreviated, non-automatic credit monitoring services. The limited credit monitoring is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the Private Information at issue here. Moreover, Defendant put the burden squarely on Plaintiff and Class Members to enroll in the inadequate monitoring services.

### E. Defendant Failed to Properly Protect Plaintiff's and Class Members' Private Information

66. Defendant could have prevented this Data Incident by properly securing and encrypting the systems containing Plaintiff's and Class Members' Private Information. Alternatively, Defendant could have destroyed the data, especially that of individuals with whom it no longer had a relationship.

67. Defendant's negligence in safeguarding Plaintiff's and Class Members' Private Information is exacerbated by the repeated warnings and alerts directed to companies like Defendant to protect and secure sensitive data they possess.

68. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's and Class Members' Private Information from being compromised.

69. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[21]

70. The ramifications of Defendant's failure to keep secure Plaintiff's and Class Members' Private Information are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for their respective lifetimes.

71. To prevent and detect unauthorized cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- **Implement an awareness and training program**. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- **Enable strong spam filters** to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender

[21] *See generally Fighting Identity Theft with the Red Flags Rule: A How-To Guide for Business*, FTC (May 2013), https://www.ftc.gov/business-guidance/resources/fighting-identity-theft-red-flags-rule-how-guide-business.

Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- **Scan all incoming and outgoing emails** to detect threats and filter executable files from reaching end users.

- **Configure firewalls** to block access to known malicious IP addresses.

- **Patch operating systems, software, and firmware on devices**. Consider using a centralized patch management system.

- **Set anti-virus and anti-malware programs to conduct regular scans automatically**.

- **Manage the use of privileged accounts based on the principle of least privilege**: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- **Configure access controls**—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- **Disable macro scripts from office files transmitted via email**. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- **Implement Software Restriction Policies (SRP)** or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- **Consider disabling Remote Desktop protocol (RDP)** if it is not already being used.

- **Use application whitelisting**, which only allows systems to execute programs known and permitted by security policy.

- **Execute operating system environments or specific programs in a virtualized environment.**
- **Categorize data based on organizational value** and implement physical and logical separation of networks and data for different organizational units.[22]

72. To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Incident, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….
- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….
- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.
- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….
- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender

[22] *Id.* at 3-4.

directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[23]

73. To prevent and detect cyberattacks, including the cyberattack that resulted in the Data Incident, Defendant could—and should—have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**
- Apply latest security updates;
- Use threat and vulnerability management;
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**
- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**
- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

[23] *See Protecting Against Ransomware*, Cybersec. & Infrastructure Sec. Agency: Blog (Apr. 11, 2019), https://www.cisa.gov/news-events/news/protecting-against-ransomware (last updated Sept. 2, 2021).

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities;
- Hunt for brute force attempts;
- Monitor for cleanup of Event Logs;
- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall;
- Enable tamper protection;
- Enable cloud-delivered protection;
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[24]

74. Moreover, given that Defendant was storing Plaintiff's and Class Members' Private Information, Defendant could and should have implemented all the above measures to prevent and detect cyberattacks.

75. The occurrence of the Data Incident indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Incident and the exposure of Plaintiff's and Class Members' Private Information.

76. As a result of computer systems in need of security upgrades, inadequate procedures for handling email phishing attacks, viruses, malignant

---

[24] *See Human-operated ransomware attacks: A preventable disaster*, Microsoft (Mar. 5, 2020). https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

computer code, hacking attacks, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

77. Because Defendant failed to properly protect and safeguard Plaintiff's and Class Members' Private Information, an unauthorized third party was able to access Defendant's network, and access Defendant's database and system configuration files and exfiltrate that data.

**F. Defendant Failed to Comply with Industry Standards**

78. As shown above, experts studying cybersecurity routinely identify companies in the logistics industry as being particularly vulnerable to cyberattacks because of the value of the Private Information that they collect and maintain.

79. Several best practices have been identified that at a minimum should be implemented by logistic and warehousing providers like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

80. Other best cybersecurity practices that are standard in the industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and

protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

81. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

82. The foregoing frameworks are existing and applicable industry standards in the logistics industry, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Incident.

83. Upon information and belief, Defendant failed to comply with one or more of the foregoing industry standards.

**G. Plaintiff Miah Cliatt's Experience**

84. Plaintiff Miah Cliatt is, and at all times relevant hereto was, a citizen and resident of Phenix City, Russell County, Alabama.

85. Plaintiff Cliatt is a former Aflac employee and, while employed at Aflac, was also an Aflac policyholder. After leaving her position at Aflac, her

husband remained employed with Aflac, and she became a beneficiary under his Aflac policy.

86. Plaintiff Cliatt provided Defendant with her Private Information as a condition of her employment and status as a policyholder and beneficiary of a policy with Defendant.

87. On June 20, 2025, Defendant sent Plaintiff Cliatt a notice email informing her about the Data Incident. This was how Plaintiff Cliatt first learned of the Data Incident.

88. Defendant was in possession of Plaintiff Cliatt's Private Information before, during, and after the Data Incident.

89. Plaintiff Cliatt reasonably understood and expected that Defendant would safeguard her Private Information and timely and adequately notify her in the event of a data breach. Plaintiff would not have allowed Defendant, or anyone in Defendant's position, to maintain her Private Information if she believed they would fail to implement reasonable and industry-standard practices to safeguard that information from unauthorized access.

90. Plaintiff Cliatt greatly values her privacy and Private Information and takes reasonable steps to maintain the confidentiality of her Private Information. Plaintiff is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Incident.

91. Plaintiff Cliatt stores any and all documents containing Private Information in a secure location and destroys any documents she receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise her identity and credit card accounts. She also diligently chooses unique usernames and passwords for her various online accounts.

92. As a result of the Data Incident, Plaintiff Cliatt has spent time researching the Data Incident, reviewing her bank accounts twice a day, monitoring her credit report, placing a credit freeze, and conducting other necessary mitigation efforts. This is valuable time that Plaintiff spent at Defendant's direction and that she otherwise would have spent on other activities, including but not limited to work and/or recreation.

93. The Data Incident has caused Plaintiff Cliatt to suffer fear, anxiety, and stress that criminals acquired her Private Information as a result of the Data Incident.

94. Plaintiff Cliatt anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Incident. In addition, Plaintiff will continue to be at present and continued increased risk of identity theft and fraud for years to come.

95. Plaintiff Cliatt has a continuing interest in ensuring that her Private Information, which upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

96. As a direct and traceable result of the Data Incident, Plaintiff Cliatt suffered actual injury and damages after her Private Information was compromised and stolen in the Data Incident, including, but not limited to: (a) lost time and money related to placing a credit freeze and monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendant did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff; and (g) other economic and non-economic harm.

## CLASS ALLEGATIONS

97. Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class:

> **All individuals in the United States whose Private Information was impacted in the Defendant's Data Incident reported in June 2025.**

98. Excluded from the Class are Defendant; its subsidiaries and affiliates; its officers, directors and members of its immediate families and any entity in which Defendant has a controlling interest; the legal representative, heirs, successors, or

assigns of any such excluded party; the judicial officer(s) to whom this action is assigned; and the members of its immediate families.

99. Plaintiff reserves the right to modify or amend the definition of the proposed Class prior to moving for class certification.

100. **Numerosity**, Fed R. Civ. P. 23(a)(1): Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least thousands of individuals who were notified by Defendant of the Data Incident. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

101. **Commonality**, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

a. Whether and to what extent Defendant had a duty to protect Plaintiff's and Class Members' Private Information;

b. Whether Defendant had duties not to disclose Plaintiff's and Class Members' Private Information to unauthorized third parties;

c. Whether Defendant had duties not to use Plaintiff's and Class Members' Private Information for non-business purposes;

d. Whether Defendant failed to adequately safeguard Plaintiff's and Class Members' Private Information;

e. Whether and when Defendant actually learned of the Data Incident;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Incident;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Incident to occur;

j. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and Class Members' Private Information;

k. Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

l. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Incident.

102. **Typicality**, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their Private Information compromised as a result of the Data Incident, due to Defendant's misfeasance.

103. **Policies Generally Applicable to the Class**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

104. **Adequacy**, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the

Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

105. **Superiority and Manageability**, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

106. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because in individual suits, Defendant would necessarily gain an

unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

107. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

108. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

109. Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Incident, and Defendant may continue to act unlawfully as set forth in this Complaint.

110. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

111. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d. Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

e. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Incident;

f. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and Class Members' Private Information;

g. Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## **COUNT I - NEGLIGENCE**

112. Plaintiff re-alleges and incorporates by reference herein all of the factual allegations contained in paragraphs 1 through 96.

113. Plaintiff and the Class entrusted Defendant with their Private Information.

114. Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

115. Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

116. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

117. Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the Private Information of Plaintiff and the Class in Defendant's possession was adequately secured and protected.

118. Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain.

119. Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Private Information of Plaintiff and the Class.

120. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class.

That special relationship arose because Plaintiff and the Class entrusted Defendant, either directly or indirectly, with their confidential Private Information, a necessary part of obtaining services from Defendant.

121. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

122. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

123. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

124. Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Incident as set forth herein.

125. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

126. Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

127. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of Data Incident.

128. Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

129. Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiff and the Class.

130. Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Incident.

131. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and the Class during the time the Private Information was within Defendant's possession or control.

132. Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Incident.

133. Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiff and the Class in the face of increased risk of theft.

134. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

135. Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove Private Information that it was no longer required to retain pursuant to regulations.

136. Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Incident.

137. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

138. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the

Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

139. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Incident, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has

been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Incident for the remainder of the lives of Plaintiff and the Class.

140. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

141. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

142. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

**COUNT II – NEGLIGENCE PER SE**

143. Plaintiff re-alleges and incorporates by reference herein all of the factual allegations contained in 1 through 96.

144. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and the Class Members' Private Information.

145. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

146. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

147. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect and the harm that occurred as a result of the Data Incident is the type of harm the FTC Act was intended to guard against.

148. The Private Information of Plaintiff and the Class was stolen as the proximate result of Defendant's failure to exercise reasonable care in accordance with the standards required by the FTC Act.

149. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Incident, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Incident for the remainder of the lives of Plaintiff and the Class.

150. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or

harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

151. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

152. Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

## COUNT III – DECLARATORY JUDGMENT

153. Plaintiff re-alleges and incorporates by reference herein all of the factual allegations contained in 1 through 96.

154. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal statute described in this Complaint.

155. Defendant owes a duty of care to Plaintiff and Class Members, which required it to adequately secure Plaintiff and Class Members' Private Information.

156. Upon information and belief, Plaintiff and Class Members' Private Information still remains in Defendant's possession.

157. An actual controversy has arisen after the Data Incident regarding Plaintiff and Class Members' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their Private Information. Plaintiff alleges that Defendant's data security measures remain inadequate. Defendant publicly denies these allegations. Furthermore, Plaintiff continues to suffer injury due to the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future. It is unknown what specific measures and changes Defendant has undertaken in response to the Data Incident.

158. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of her Private Information and the risk remains that further compromises of her and the Class's Private Information will occur in the future.

159. Plaintiff and Class Members have an ongoing, actionable dispute arising out of Defendant's inadequate security measures, including: (i) Defendant's failure to encrypt Plaintiff and Class Members' Private Information, including Social Security numbers, while storing it in an Internet-accessible environment, and (ii)

Defendant's failure to delete Private Information it has no reasonable need to maintain in an Internet-accessible environment, including the Social Security numbers of Plaintiff.

160. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure Plaintiff's and Class Members' Private Information;

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Private Information;

c. Defendant's ongoing breaches of its legal duty continue to cause Plaintiff harm.

161. This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law, industry, and government regulatory standards to protect consumers' Private Information. Specifically, this injunction should, among other things, direct Defendant to:

a. engage third-party auditors, consistent with industry standards, to test its systems for weakness and upgrade any such weakness found;

b. audit, test and train its data security personnel regarding any new or modified procedures and how to respond to a data breach;

c. regularly test its systems for security vulnerabilities, consistent with industry standards; and

d. implement an education and training program for appropriate employees regarding cybersecurity.

162. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

163. The hardship to Plaintiff, if an injunction is not issued, exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to use such measures.

164. Issuance of the requested injunction would satisfy the public interest. In fact, an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and others whose Private Information would be further compromised.

**COUNT IV – VIOLATION OF O.C.G.A. § 13-6-11**

165. Plaintiff re-alleges and incorporates by reference herein all of the factual allegations contained in 1 through 96.

166. Defendant through its actions alleged and described herein acted in bad faith, was stubbornly litigious, or caused Plaintiff and the Class unnecessary trouble and expense with respect to the events underlying this litigation.

167. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Defendant for failing to implement and use reasonable measures to protect Private Information.

168. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information that it obtained and stored and the foreseeable consequences of a data breach.

169. Defendant also has a duty under the Georgia Constitution, which contains a Right to Privacy Clause, Chapter 1, Article 1, to protect its users' private information. The Georgia Constitution states, "no person shall be deprived of life, liberty, or property except by due process of law." Moreover, the Georgia

Constitution identifies certain invasions of privacy, including the Public Disclosure of Private Life which prohibits the public disclosure of private facts.

170. This duty has been recognized by the Georgia Supreme Court in the Restatement of the Law of Torts (Second) §652A, which specifically recognized four common law invasion of privacy claims in Georgia: 1) appropriation of likeness; 2) intrusion on solitude or seclusion; 3) public disclosure of private facts; and 4) false light.

171. Defendant's failure to implement adequate data security measures, its failure to resolve vulnerabilities and deficiencies, and its abdication of its responsibility to reasonably protect the Private Information it required Plaintiff and the Class to provide and store on its own servers constitute a violation of the Georgia Constitution and the Restatement of the Law of Torts (Second).

172. Defendant knew or should have known that it had a responsibility to protect the Private Information it required Plaintiff and the Class to provide and stored, that it was entrusted with this Private Information, and that it was the only entity capable of adequately protecting the Private Information.

173. Despite that knowledge, Defendant abdicated its duty to protect the Private Information it required Plaintiff and the Class to provide and that it stored.

174. As a direct and proximate result of Defendant's actions, Plaintiff and the Class Members' Private Information was stolen. As further alleged above, the

Data Incident was a direct consequence of Defendant's abrogation of data security responsibility and its decision to employ knowingly deficient data security measures that, as Defendant knew or should have known, left the Private Information unsecured. Had Defendant adopted reasonable data security measures, it could have prevented the Data Incident.

175. As further described above, Plaintiff and the Class have been injured and suffered losses directly attributable to the Data Incident.

176. Plaintiff and the Class therefore request that their claim for recovery of expenses of litigation and attorneys' fees be submitted to the jury and that the Court enter a judgment awarding their expenses of litigation and attorneys' fees pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, request judgment against Defendant and that the Court grant the following:

A. For an Order certifying the Class, and appointing Plaintiff and her Counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and

from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iii. requiring Defendant to delete, destroy, and purge Plaintiff's and Class Members' Private Information unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' Private Information;

v. prohibiting Defendant from maintaining Plaintiff's and Class Members' Private Information on a cloud-based database;

vi. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix. requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x. requiring Defendant to conduct regular database scanning and securing checks;

xi. requiring Defendant to establish an information-security training program that includes at least annual information-security training for

all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting Plaintiff's and Class Members' Private Information;

xii. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a data breach when it occurs and what to do in response to a breach;

xiii. requiring Defendant to implement a system of tests to assess its employees' knowledge of the education programs discussed in the preceding subparagraphs as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat-management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendant to meaningfully educate all Class Members about the threats that they face due to the loss of their confidential

personal identifying information to third parties as well as the steps affected individuals must take to protect themselves;

xvi. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D. For an award of damages, including, but not limited to, actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For pre- and/or post-judgment interest on all amounts awarded; and,

G. Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: July 3, 2025

Respectfully submitted,

/s/ MaryBeth V. Gibson
MaryBeth V. Gibson
Georgia Bar No. 725843
**Gibson Consumer Law Group, LLC**
4279 Roswell Road
Suite 208-108
Atlanta, GA 30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

Steven M. Nathan*
Gisela Rosa*
**HAUSFELD LLP**
33 Whitehall Street
Fourteenth Floor
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
snathan@hausfeld.com

James J. Pizzirusso*
**HAUSFELD LLP**
1201 17th Street N.W.
Suite 600
Washington, D.C. 20036
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
jpizzirusso@hausfeld.com

*PHV forthcoming**

***Counsel for Plaintiff and the Proposed Class***